**In re TELECTRONICS PACING SYSTEMS, INC., Accufix Atrial "J" Leads Products Liability Litigation**

No. MDL—1057,
No. C–1–95–87.

United States District Court,
S.D. Ohio,
Western Division.

March 8, 2001.

Richard Stuart Wayne, Strauss & Troy, Cincinnati, OH, Ronald Richard Parry, Arnzen Parry & Wentz, Covington, KY, Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for Eugene H. Owens, on Behalf of himself and all others similarly situated.

Ronald Parry, Arnzen Parry & Wentz, Covington, KY, for Elise Marie Owens.

Frank Chester Woodside, III, James Albert Comodeca, Dinsmore & Shohl, Cincinnati, OH, Charles P. Goodell, Jr., Richard M. Barnes, Goodell DeVries Leech & Gray, Baltimore, MD, for TPLC Inc. dba Telectronics Pacing Systems Inc.

Frank Chester Woodside, III, Dinsmore & Shohl, Cincinnati, OH, Charles P. Goodell, Jr., Goodell DeVries Leech & Gray, Baltimore, MD, for Telectronics Holdings Ltd.

Gerald Joseph Rapien, Daniel R. Warncke, Taft Stettinius & Hollister, Cincinnati, OH, for Telectronics Pty Limited.

Amanda Frost, Public Citizen Litigation Group, Washington, DC, amicus.

Gerald Joseph Rapien, Daniel R. Warncke, Taft Stettinius & Hollister, Cincinnati, OH, S. Patrick McKey, Gardner Carton & Douglas, Chicago, IL, for Pacific Dunlop Limited and Nucleus Limited.

Virginia Conlan Whitman, Special Master, Cincinnati, OH.

SPIEGEL, Senior District Judge.

This matter is before the Court on Robert A. Perez, Sr.'s, Serving as Local Counsel, Application for Reasonable Attorney's Fees and Expenses on Behalf of Class Member, Harold Reed (doc. 989); Public Citizen's Memorandum in Opposition to the Fee Petition of Robert Perez, Jr. (doc. 1024); Robert Perez, Jr.'s Reply (doc. 1084); Public Citizen's SurReply Regarding Roberts Perez, Jr.'s Fee Petition (doc. 1090); Letters to the Court from Sam Watts for Viola Watts to Defendant Teletronics, not able to appear at the Fairness Hearing (docs. 994 & 1034);[1] Public Citizen's Application for an Award of Attorneys' Fees and Expenses (doc. 995); the PSC's Memoranda in Support of its Application for Attorneys' Fees, Expenses, and Class Representative Awards and Responses to Public Citizen's Memoranda in Opposition (docs. 640, 689, 690, 965, 1018, 1020, 1029 & 1097); and Public Citizen's Memoranda in Opposition to the PSC's Application for Attorneys' Fees and Expenses (docs. 1004, 1005, 1024 & 1096).

Defendants Pacific Dunlop, Inc. and Nucleus did not file a memorandum in opposition on the issue of the PSC's Application for Attorneys' Fees, Expenses and Class Representative Awards.

In addition, the Court held a Fairness Hearing in this matter on February 15, 2000 (doc. 1035).

1. Ms. Watts February 15, 2001 Letter to the Court reads in total:

> My name is Sam Watts, acting Power of Attorney for Viola E. Watts. On behalf of my mother, Viola E. Watts, I have read and agree with Public Citizens' *Amicus Curiae* Objections to Undisclosed Side Agreements and to the PSC's Fee request. I would like to join in the Objections. Fairness being the issue, the Plaintiffs seem to be coming up short with regard to settlement dollars. (doc. 1034).

## I. BACKGROUND

### A. *Factual and Procedural History*

#### 1. Introduction

On February 15, 2001, this Court held a Fairness Hearing on the issue of attorneys' fees, expenses, class representatives' awards, and any formal objections to those requests. During the Hearing, the only "Objector" to the Plaintiffs' Steering Committee's ("PSC") Application for Attorneys' Fees and Expenses was the *amicus,* Public Citizen, with whom class member Viola Watts has also agreed with, but after the January 16, 2001 Objection deadline, and, as far as the Court is aware, Ms. Watts is not yet represented by Public Citizen or any other Counsel at this time.

The Court further notes that Ms. Watts was unable to attend the Fairness Hearing. Furthermore, in her February 15, 2000 Letter to the Court, Ms. Watts did not cite any specifics as to her Objections to the size of the Patient Benefit Fund and Reserve Fund, in relation to the issue of the amount of attorneys' fees and expenses requested by the PSC. Nonetheless, this Court will address all such possible Objections to the issue of attorneys' fees when we address Public Citizen's concerns later in this Order.

#### 2. The Court's Companion Order to this Opinion.[2]

Contemporaneous with this Opinion, the Court filed a separate, Companion Order

In Ms. Watts Letter to the Court filed in January of 2001, Ms. Watts cited to no specific objections to the Second Settlement or the PSC's Application, but rather expressed her frustrations and health problems she is experiencing due Teletronics alleged negligence (*see* doc. 994).

2. Due to the fact that Court is submitting two Orders on similar subjects that will be filed on the same day, one Order for the Approval of the Second Settlement and one Order for the Approval of the Applications for Fees and

to this Opinion, which addresses in detail the factual, procedural and appellate histories of this case, and, we conclude in the Companion Order that the proposed Second Settlement, Agreement and Plan of Allocation in the class action of *In re Teletronics Pacing Sys., Inc.*, MDL 1057 (S.D.Ohio March 2001), is fair, adequate, and reasonable under the circumstances to the Class as a whole, despite the concerns of Public Citizen to the contrary.

Specifically, this Court concluded that the Patient Benefit Fund of $58,200,000.00 ($58.2 million), the Reserve Fund of $4,200,000.00 ($4.2 million), and the 1998 $5,000,000.00 ($5.0 million) Settlement with the United States' Health Care Finance Administration ("HCFA") should be approved despite the single "objection" by the *amicus*, Public Citizen, that the Louisiana claimants were given "special treatment" by the PSC and Defendants due to their redhibition claims being settled for an additional three-hundred thousand dollar ($300,000.00) payment in regards to those claimants only, and not the Class as a whole (*see* doc. 1100).

**B.** *Introduction to the Parties' Applications for Fees and Expenses*

In its Second Application for Attorneys' Fees, the PSC requested a single fee from which the PSC will allocate the attorneys' fees among the attorneys who provided a benefit to the Class (doc. 1018). In addition, the PSC asserts that it will work with the private, state court, contingency fee counsel ("Plaintiffs' Counsel") that rendered such services, which benefitted the Class as a whole, and, the PSC will see to it that Plaintiffs' Counsel receive fair and adequate compensation for their efforts that benefitted the Class.

During the February 15th Hearing, the PSC represented to the Court that no side

agreements were entered into with Plaintiffs' Counsel, which would provide special benefits to their clients different than the benefits to be received by all other class members (doc. 1097). The PSC did represent, however, that they had discussed with Plaintiffs' Counsel the "allocation" of the fees and expenses that Counsel might receive out of the single fee and expense award that this Court would eventually grant to the PSC in a one lump-sum award.

Nonetheless, according to the representations made by the PSC during the Hearing, the exact amount of fees and expenses that Plaintiffs' Counsel could expect to receive is unknown, because the amount of the award that has yet to be granted by this Court is also unknown. Therefore, the PSC argues that there is no "agreement to allocate," "side deal", or "evidence of collusion" in regards to any specific amount of money to Counsel (doc. 1097).

Furthermore, since the PSC is vested with the authority to allocate fees and expenses to Plaintiffs' Counsel, the PSC expressed concern that, "the trial court is not placed in a position where it is necessary for the Court to examine individual fee arrangements" (docs. 1018 & 1097). *See Jenkins v. McCoy*, 882 F.Supp. 549, 555 (S.D.W.Va.1995).

Up until January 10, 2001, Public Citizen represented class member and former Objector Harold Reed in this case, when Mr. Reed decided to opt-out of the proposed settlement without filing any further objections to it (docs. 1004 & 1005). Public Citizen then sought leave from this Court to participate in the Fairness Hearing as *amicus curiae*, without a client in this action, for two stated reasons.

Expenses, the Court directs that these Orders be referred to as such in the future by the

Parties to this case in order to avoid confusion as to each.

According to its brief, Public Citizen wanted this Court to be aware of certain "side deals between the PSC, Defendants, and Plaintiffs' Counsel who represent individual, state court, class members so that the Court could consider the effect of those deals, if any, on the fairness of the Second Settlement." *See Bowling v. Pfizer, Inc.* 102 F.3d 777, 781 n. 3 (6th Cir. 1996) (Fee-sharing agreements reached during negotiation of the settlement "should certainly raise questions at the settlement-approval stage" because of the "risk that counsel has in some way been 'bought off,' and was provided with a significant incentive not to represent the class's interest.").

In addition, Public Citizen asserts that the PSC's Application for Fees and Expenses suffers from most of the same flaws as the previous requests that were submitted with the First Settlement, which was ultimately appealed to the Sixth Circuit Court of Appeals (docs. 1004 & 1005). *See Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir.1993) (finding that the "interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery, because the fees come out of the common fund set up for the benefit of the class.").

### C. The Sixth Circuit Court of Appeals

On March 5, 1999, this Court issued an Order approving the 1998 proposed First Settlement, Agreement and Plan of Allocation of this case, and, we further approved the PSC's Application for Attorney Fees and Expenses for over twenty-eight percent (28%) of the net Settlement Fund, also called the "common fund doctrine" fee reimbursement. *See In re Telectronics*

*Pacing Sys., Inc.,* 186 F.R.D. 459, 486 (S.D.Ohio 1999).

Specifically, during the First Settlement, the PSC moved for an award of attorneys' fees totaling approximately thirty percent (29.9%) percent of the Total Patient Benefit and Reserve Funds, which equaled $57,275,297.00 ($57.2 million), for a total fee of $17,157,083.16 ($17.1 million), plus the PSC's out-of-pocket expenses, which equaled $2,243,771.93 ($2.2 million). *In re Telectronics,* 186 F.R.D. at 481.

During the First Settlement, the PSC also sought $441,991.79 to reimburse the Plaintiffs' Counsel for their out-of-pocket expenses and a total of $141,000.00 to be paid to a number of individually, named plaintiffs and class representatives ("Plaintiffs") that assisted in the prosecution of this litigation. *Id.*[3]

Finally, Defendants did not oppose the PSC's Application for Attorneys' Fees and Expenses during the First Settlement, however, a number of Objectors, including Public Citizen, objected to and appealed this Court's award of about $19,00,000.00 ($19.0 million) of the Total Patient Benefit and Reserve Funds (the "Total Fund") that were awarded to the PSC for fees and expenses.

In the case of *In re Telectronics Pacing Sys., Inc.,* the Sixth Circuit held that this Court's certification of the Class as a mandatory, non-opt-out class and the approval of the First Settlement under a "limited fund" theory, pursuant to Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure, was an abuse of discretion, reversing the settlement approval, and remanding the case back to this Court in order for us to

---

**3.** During the Hearing on Attorneys' Fees, Attorney Richard Wayne averred that the PSC believes that a request for incentive payments should be made to a number of Plaintiffs for providing additional assistance to the PSC (doc. 640). Specifically, Mr. Wayne stated

that Plaintiffs assisted in filling out questionnaires, attending the summary jury trial, and attending various hearings on behalf of the Class (*Id.*). Furthermore, some of Plaintiffs were even deposed on two separate occasions (*Id.*).

consider recertifying this matter as an opt-out class, pursuant to Rule 23(b)(3). *Id.*, 221 F.3d 870, 872–73 (6th Cir.2000).

However, the Sixth Circuit's holding did not directly disturb this Court's March 5, 2000 Order in any other way, such as in regards to: (1) the Court's finding of personal jurisdiction against Defendants PDL and Nucleus (the "Australian Defendants"); (2) the Court's certification of the Class according to the several theories of liability listed in the Complaint; and (3) the Court's award of the PSC's and Plaintiffs' Counsels' attorneys' fees, expenses, and Plaintiffs' representative awards.

Nonetheless, the Sixth Circuit did appear to advise this Court to take a second look at the PSC's fee award of over $19,000,000.00 ($19 million) in regards to the Total Fund. In discussing Defendant TPLC's threat of possible bankruptcy, the Sixth Circuit also took the opportunity to note, in dicta, the following, sole observation about the Court's award of the PSC's Application for Fee and Expenses that were requested in the First Settlement:

> Moreover, bankruptcy would require vigorous examination of administrative expenses, and would provide for a creditors' committee that would examine all claims and could object to any claim it found excessive. It is difficult to believe that administrative expenses in bankruptcy would amount to more than 25% of the total estate, or almost $20 million, the approximate amount of attorney fees and costs to be paid out to injured plaintiffs.

*In re Telectronics Pacing Sys., Inc.*, 221 F.3d at 880.

In the case at bar, Defendants do not oppose the PSC's Application for Attorneys' Fees and Expenses in the Second Settlement, as well. Furthermore, Defendants made no challenge to the PSC's requests for expenses and special payments to be made to Plaintiffs' Counsel and to Plaintiffs.

## D. Application for Fees, Expenses, and Plaintiffs' Awards.

### 1. The Case Law

This is a case where a common fund has been created through the diligent and exceptional efforts of Class Counsel. Historically, the rationale entitling counsel to a percentage of the common fund derives from the equitable powers of the courts under the doctrines of *quantum meruit, Central R.R. & Banking Co. of Georgia v. Pettus*, 113 U.S. 116, 124, 5 S.Ct. 387, 28 L.Ed. 915 (1885); unjust enrichment, *see, e.g., Trustees v. Greenough*, 105 U.S. (15 Otto) 527, 532–33, 26 L.Ed. 1157 (1881); and later, what has become known as the "substantial" or "common benefit" doctrine. *See Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 392–94, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

 All of these doctrines fall under the larger umbrella of the "common fund" doctrine. Under the common fund doctrine, fee reimbursement is permitted in the following circumstances: (1) when litigation indirectly confers substantial monetary or non-monetary benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the subject matter of the suit, and over a named defendant who is a collective representative of the Class, makes possible an award that will operate to spread the costs proportionately among class members. H. Newberg, *Attorney Fee Awards*, § 2.01, at 28–29 (1986).

### 2. The PSC's Out–of–Pocket Expense

In its Application, the PSC requests that this Court award a reimbursement of their out-of-pocket expenses in the amount of $2,337,386.51 ($2.3 million) (docs. 965 &

1029). However, Public Citizen asserts that the expenses charged by the PSC should be reduced by the Court for the PSC's failure to account for the lack of proper documentation, duplication of services, and excessive billing.

Having reviewed the materials submitted in the record, we find this concern to be reasonable, and, therefore, the Court shall REDUCE the PSC's expenses by a total of five percent (5.0%). Accordingly, we conclude that the PSC is entitled to an AWARD for its out-of-pocket expenses in the amount of $2,220,517.00 ($2.2 million) to be paid immediately from the Total Fund (docs. 965 & 1029).

### 3. Plaintiffs' Counsel's Out–of–Pocket Expenses

The PSC also recommends that the Plaintiffs' Counsel in this case be awarded $441,991.79 for the reimbursement of their out-of-pocket expenses (docs. 965 & 1029).[4]

■ It is undisputed that the efforts of Plaintiffs' Counsel in the state court cases placed a significant amount of pressure on the Defendants to settle this class action. For that reason, we believe that such Counsel contributed to the creation of the Settlement Fund, and accordingly, are entitled to receive a reimbursement of their out-of-pocket expenses in the amount of $441,991.79. *See, e.g., Skelton v. General Motors Corp.,* 860 F.2d 250, 253 (7th Cir. 1988) (recognizing that attorneys in a class action in which a common fund is created are entitled to compensation for their services and reimbursement of their out-of-pocket expenses, but the amount is subject to court approval); *Union Central Life Ins. Co. v. Hamilton Steel Prod., Inc.,* 493

F.2d 76, 79 (7th Cir.1974); H. Newberg, *Attorney Fee Awards* § 2.19, at 69 (1986).

Having reviewed this matter and for good cause shown, the Court finds that Plaintiffs' Counsel's out-of-pocket expenses are reasonable, and are, therefore, AWARDED the amount of $441,991.79 for their out-of-pocket expenses. Those expenses are to be paid immediately from the Total Fund.

### 4. Special Award to Plaintiffs

The PSC also requests special payments for each named, representative Plaintiff that assisted in the prosecution of this case (docs. 965, Ex. C & 1020). The named Class Representatives and Plaintiffs that the PSC believes should receive special payments are: Harold S. Bechert, Jamie Baldwin, Bruce Hopkins, Annette Catale, Charles Harvey, James Lloyd, Cecilia Plummer, Robert Uden, Helen L. West, Mary B. Williams, Urban V. Wittenberg, Executor of the Estate of Inphasouk Soumphonphakdy, Martha Sweet, Chad Baker, Shelly Truskowski, Eva Soboleski, Jerri Marie Stayer, Lyle E. Larson, Constance Dromehauser, Michael Kingera, Ronald Taylor, Robert Starr, John Collins, Wilford C. Schultz, Lawrence Cheyne, Gregory J. Penzenik, the Estate of Elsie Fretz, Charles Badami, Laurie Tupper, William Hawthorne, Constance Wilkins, and Karen Lane. *See* doc. 965, Ex. C for a complete list of Plaintiffs' names and amounts to be received.

There is no dispute that a number of individual Plaintiffs provided significant assistance to the PSC and Plaintiffs' Counsel, and, therefore, the PSC requests an incentive award to be made to those indi-

---

**4.** It is estimated that the expenses of Plaintiffs' Counsel totals $441,991.79 (doc. 1029). The PSC asserts that it has received financial materials from almost 100 law firms representing individual class members under con-

tingent fee contracts. The PSC proposes to establish a procedure to pay these Counsel their legitimate expenses out of the portion of the expenses awarded by the Court for this specific and express purpose (doc. 1020).

viduals. Finding that their assistance has benefitted the Class overall in this case, we hereby ORDER that $158,500.00 be AWARDED to the above-listed Plaintiffs that assisted in the prosecution of this litigation in the amounts recommended by the PSC (docs. 965, Ex. C & 1029). Such payment to be paid immediately from the Total Fund.

### 5. Public Citizen

Public Citizen, who represented class member Harold Reed until he decided to opt-out of this Settlement on January 10, 2001, has filed a request for attorney fees out of the $62.4 million Total Fund directly with this Court for the public advocacy it prosecuted on behalf of the Class as a whole, and on behalf of Harold Reed in particular, during the First and Second Settlements (docs. 995, 1004 & 1005).

In its Application, Public Citizen originally requested a fee of two percent (2.0%) of whatever the amount of award that we intend to make to the PSC (doc. 995). Public Citizen argues that the 2% is a very small percentage given the importance of the benefits that its lawyers have conferred on the Class, in comparison to the ninety-eight percent (98.0%) that is left over to pay the PSC for its services to the Class (doc. 995).

Because the work done by Public Citizen's attorneys is properly understood as work done on behalf of the Class, Public Citizen argues that it is appropriate to calculate its attorney fees as a percentage of the PSC's award and then deduct Public Citizen's fee from the PSC's award (doc. 995). Alternatively, in their Application, Public Citizen contends that, "if the Court chooses to award [Public Citizen] a fee based on a lodestar calculation, the award should be no less than $72,539.00, which is [Public Citizen's] straight lodestar without the multiplier" (doc. 995).

In addition, Public Citizen is also requesting an additional $4674.61 in expense reimbursement related solely to the travel cost involved in making four essential trips to Cincinnati; three times for Hearings before this Court and once for oral arguments before the Court of Appeals (doc. 995, Ex. 6).

Moreover, Public Citizen asserts that the Pittsburgh law firm of Malakoff, Doyle & Finberg is entitled to be reimbursed for $461.57 in expenses for their assisting Mr. Reed, *pro bono,* in filing his initial objections to this Court during the First Settlement, during the period of time before Public Citizen took over his representation in this matter.

During the February 15, 2001 Fairness Hearing, Brian Wolfman, Esq., on behalf of Public Citizen, requested that this Court award Public Citizen either one percent (1.0%) of the Total Fund or a straight lodestar based on a total of 381 hours worked times an average hourly rate of $200.00 per hour. The Court takes note that none of the Parties represented at the Hearing objected to Public Citizens' fee and expenses requests based on the lodestar calculation.

■ Having reviewed this matter and finding good cause and no objection to this issue, the Court finds Public Citizen's Application for Attorneys' Fees and Expenses (doc. 995) to be well-taken and is hereby GRANTED–IN–PART. Accordingly, Public Citizens is AWARDED their attorney fees, as requested at the Hearing, based on their lodestar amount of an average hourly rate of $200.00 per hour times the 381 documented hours worked, for a total attorney fee of $76,200.00, an AWARD of $4,674.61 in litigation expenses to Public Citizen, and an AWARD of $461.57 in litigation expenses to the Pittsburgh law firm of Malakoff, Doyle & Fin-

berg to be paid immediately from the Total Fund.

### 6. Robert A. Perez, Sr.

On January 12, 2001, Robert A. Perez, Sr. filed an Application for Attorneys' Fees and Expenses for his work as Local Counsel for Public Citizen on behalf of their former client, class member and Objector, Harold Reed (doc. 989). Apparently, Mr. Perez served as Local Counsel for Mr. Reed for approximately five months in 1998, on behalf of Public Citizen (doc. 989). Mr. Perez has filed a fee petition seeking $15,753.00 in attorney fees and $119.31 in expenses (doc. 989).

On February 1, 2001, Public Citizen filed a Memorandum in Opposition to Mr. Perez's Application for Fee and Expenses alleging that Mr. Perez's fee petition misstates the amount of work he has performed on behalf of Mr. Reed, exaggerates the hours he devoted to the work he did perform, and seeks fees for work of no benefit to the Class (doc. 1024).

Public Citizen argues that the Class should not be forced to compensate Mr. Perez for anything other than the time it should have reasonably taken him to perform his task as Local Counsel (doc. 1024). The Court takes note of the fact that neither the PSC, nor Defendants, opposed Mr. Perez's Application in their briefs or during the Fairness Hearing.

After the Fairness Hearing was held in which he did not make an appearance, Mr. Perez submitted a Reply to Public Citizen's opposition memorandum (doc. 1084)

Shortly thereafter, Public Citizen filed a SurReply further opposing Mr. Perez's fee request (doc. 1090).

During the February 15th Hearing, Public Citizen informed the Court that it had a dispute with Mr. Perez as their Local Counsel and requested that the Court review and grant each of their fee and expenses request separately. The Court informed Public Citizen that it and Mr. Perez would be treated no differently than the PSC's and Plaintiffs' Counsel's Application for Fees and Expenses, in that, the Court would only award one total fee to Public Citizen, which award is also to be used to reimburse Mr. Perez's fees and expenses for serving as Local Counsel to Mr. Reed. The Court expects Public Citizen and Mr. Perez to attempt to work out their fee and expenses dispute privately, before seeking the Court's intervention on this matter.

If the Parties cannot resolve their fee dispute privately, then the matter of the disputed fee can be submitted to this Court by way of memoranda for a final decision on that issue.

### 7. The PSC's Application

Finally, the PSC seeks an award of attorneys' fees totaling twenty-seven (27.09%) percent of the Total, which at this time is equal to approximately $62,400,000.00 ($62.4 million),[5] for a total PSC fee request of $16,906,196.40 ($16.9 million) (docs. 965 & 1029).

---

**5.** The Second Settlement consist of two Funds. The Patient Benefit Fund totals, as of the date of this Order, approximately $58,-200,00.00 ($58.2 million), plus accrued interest and less payments to Class Members for warranty and reimbursement claims and the costs to notify the Class of the Settlement (doc. 1020). This Fund will be used to pay Leads–Related Claims. The Second Settlement also includes the Reserve Fund consist-

ing of, as of the date of this Order, an additional and approximate $4,200,000.00 ($4.2 million), which will be used by Defendants to pay for expenses related to Leads–Related Claims that are not covered by this litigation, including attorneys' fees, litigation costs, judgments and/or settlements relating to any other Leads–Related Claims. *See* Agreement of Compromise and Settlement ¶ 6.3.2.

In addition, the PSC asserts that it is not asking for any fee from the $5,000,000.00 ($5.0 million) Settlement with the HCFA in 1998,[6] which was negotiated with the assistance of the PSC, and the PSC contends that such settlement provided a benefit to the Class valued in 2001 dollars at more than $50 million[7] (doc. 965).

However, according to the PSC, it believes that this Court should still consider the 1998–HCFA Settlement in determining the fairness of the time spent by the PSC (and the attorneys that did work for the Class). The PSC asserts that its request for attorneys' fees is equal to the value of the time spent by the PSC, excluding the time the PSC contributed to the HCFA Settlement (and the attorneys that did work for the benefit of the Class).

Since the inception of the proposed settlement, the PSC maintains in its briefs that, it has devoted a total of 75,854.07 hours to the prosecution of this action on behalf of the Class (docs. 965 & 1029). The value of the time that the attorneys and paralegals for the PSC worked on this case, according to the PSC's calculations, totals a "lodestar" value of $16,906,196.40 ($16.9 million) (docs. 965 & 1029).

During the Hearing, the PSC asserted to the Court that it would accept a simple lodestar calculation of its fees based on the more than 76,000 hours it has worked on this case as of February 15, 2001, times the average, hourly, attorney rate of $230.00 per hour for a total of $17,480,000.00 ($17.4 million), without any additional multiplier, enhancement, or accounting for the excellent work done on behalf of the Class as a whole, which comes to exactly twenty-eight percent (28.01%) of the Total Patient Fund.

On November 20, 2000 (doc. 965), the PSC attached to its supporting Motion a number of exhibits, affidavits, and financial records as proof of the fees and expenses requested:

(1) Exhibit A is a compilation which sets forth the names of each law firm included in the Joint Fee Application, the number of hours work that was rendered by each firm, the value of the services performed, and expenses incurred by each of the law firms that has provided services since the initial Joint Fee Application was filed with this Court on December 7, 1998 (doc. 640);

(2) Exhibit B is a copy of a compilation of the time spent on this case by members of the PSC from December 1998 through November 17, 2000;

(3) Exhibit C is a list of the representative Plaintiffs and other class Plaintiffs who provided the PSC with substantial assistance in the prosecution of the case. The PSC requests that the Court award a special payment to these Plaintiffs in the amount of $158,500.00;

(4) Exhibit D is the Affidavit of Stanley M. Chesley, Lead Counsel for the PSC and a member of the law firm of Waite, Schneider, Bayless & Chesley Co., L.P.A.;

---

**6.** Under the terms of the First and Second Settlements, TPLC paid $5,000,000.00 ($5.0 million) to the United States on behalf of itself and all Medicare beneficiaries in the United States (doc. 1020). In exchange for the payment, the United States agreed to release and discharge all past, present, and future claims by the United States for expenses paid for medical treatment related to the "J" Leads. Further, the Department of Heath and Human Services agreed to relinquish all rights to any portion of any judgments, settlements, claims, or collections related to medical expenses that were, or will be, paid to recipients of the "J" Lead.

**7.** An estimate of the value of the 1998–HCFA Settlement is allegedly supported by the Declaration of Richard S. Wayne in Support of the PSC's Joint Application for Attorneys' Fees and Reimbursement of Expenses, which was filed with the Court on December 22, 1998 (doc. 671).

(5) Exhibit E is the Affidavit of Richard S. Wayne, Liaison Counsel for the PSC and a member of the law firm of Strauss & Troy;

(6) Exhibit F is the Affidavit of Louis F. Gilligan, a member of the law firm of Keating, Muething & Klepkamp;

(7) Exhibit G is the Affidavit of R. Eric Kennedy, a member of the law firm of Weisman, Goldberg & Weisman Co. L.P.A.; and

(8) Exhibit H is the Affidavit of A. Bruce Jones, a member of the law firm of Holland & Hart.

(doc. 965).

The PSC argues that, "on the basis of the amount of hours spent, the high risk of this contingent litigation, the standing and reputation of the twenty-one (21) law firms representing the Class and the benefits conferred, the requested fee is fair and reasonable" (doc. 965).

However, Public Citizen asserts that the fees charged by the PSC should be reduced by the Court for the PSC's failure to account for the lack of proper documentation, duplication of services, billing of clerical tasks, charging for services that are normally included as overhead, costs of copies, and excessive billing.

■ Having reviewed the materials submitted in the records, we find this concern to be reasonable, and, therefore, the Court shall REDUCE the PSC's requested lodestar fees by total of five percent (5.0%). Accordingly, we conclude that the PSC is entitled to receive an AWARD in the amount of $16,606,000.00 ($16.606 million), which comes to twenty-six percent (26.6%) of the Total Fund, to be paid according to the specific terms of the Holdback Provi-

sion Section of this Order (docs. 965 & 1029).

## II. DISCUSSION

### A. *Introduction*

The PSC seeks attorneys' fees in this case and reimbursement for costs and expenses. Specifically, in its Third Supplemental Filing, the PSC seeks fees totaling $16,906,196.40 ($16.9 million), as well as $2,337,386.51 ($2.3 million) to reimburse the PSC for its out of pocket expenses, and $441,991.79 for reimbursement of out of pocket expenses of Plaintiffs' Counsel (doc. 1029).

At the Fairness Hearing that was held on February 15, 2001, the Lead Counsel for the PSC, Stanley M. Chesley, modified the request for attorney's fees to a simple lodestar formula of 76,000 hours worked times an average hourly rate of $230.00, in order to arrive at the lodestar amount of $17,480,000 ($17.4 million). Defendants do not oppose the PSC's Application.

The resolution of this case resulted in a Patient Benefit Fund, comprised of $58.2 million, for the common benefit of the settlement class, and a $4.2 million Reserve Fund (doc. 1020). The Third Supplemental Filing requests an award of attorneys' fees for PSC totaling 16,906,196.40, which is approximately twenty-seven percent (27.09%) of the $62.4 million total of these Funds (doc. 1029). The adjusted lodestar amount proposed on February 15th of $17,480,000.00 ($17.4 million) represents only twenty-eight percent (28.01%) of the Total Fund.

The source of the fee award that is requested here closely resembles the award of fees in "common fund" cases.[8]

---

8. The "common fund" doctrine often comes into play where there has not been a previous agreement that the attorneys' fees will come from the common settlement fund. *See e.g., Enterprise Energy Corp.,* 137 F.R.D. at 248; *In*

*re Dun & Bradstreet,* 130 F.R.D. 366, 372 (S.D.Ohio 1990). Because the interests of the class members with respect to the amount of the attorneys' fees are the same here as in

The "common fund doctrine" provides that, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *The Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). It is premised upon the principle "that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *The Boeing Co.,* 444 U.S. at 478, 100 S.Ct. 745. Thus, the issue before this Court is to decide the amount of the reasonable fee to which the PSC is entitled.

■ As stated earlier, this is a case where a common fund has been created through the efforts of Class and Plaintiffs' Counsel, and under the principles of the "common fund doctrine," "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *In re Southern Ohio Correctional Facility,* 173 F.R.D. 205, 216 (S.D.Ohio 1997) (citing *The Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)); *see also Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 393, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

■ However, the award of attorneys' fees lies within the sound discretion of the district court. *Smillie v. Park Chemical Co.,* 710 F.2d 271, 275 (6th Cir.1983) (citing *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir.1974)). The ultimate task for the district court is to insure that counsel is fairly compensated for the amount of work performed and the results achieved. *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir. 1993) (citation omitted). Moreover, the district court must determine the reason-

ableness of the fee request in light of the particular circumstances of the litigation. *Rawlings,* 9 F.3d at 516; *Smillie,* 710 F.2d at 275.

■ The Sixth Circuit currently accepts two methods of determining the reasonableness of a fee request. The first method—the "lodestar" method—requires the class counsel to submit a listing of hours and their rates charged per hour. The lodestar method necessitates that the court calculate the reasonable number of hours submitted multiplied by the attorneys' reasonable hourly rates.

This sum is then generally increased by a "multiplier" to account for the costs and risks involved in the litigation, as well as the complexities of the case and the size of the recovery. *See Newberg on Class Actions* § 12.55 (3d ed.1992). The application of the lodestar method is advantageous because it provides greater accountability for the amount of work performed by class counsel. *Rawlings,* 9 F.3d at 516. Furthermore, the "lodestar" method may be used to account for the risk undertaken by class counsel in assuming the litigation, the quality of the work performed, and the public benefit achieved. *Id.* at 516.

■ The other method that is accepted in this Circuit is the "percentage of the fund" method which stands in stark contradistinction to the lodestar approach. Under the percentage of the fund method, the court simply determines a percentage of the settlement to award the class counsel. *Manual on Complex Litigation,* § 24.121, at 187–90 (3d ed.1995). The percentage of the fund method is advantageous because it accurately reflects the results achieved in light of the unique circumstances of any particular case, without the court becoming entangled in a time-

other common fund cases, we analyze the fee award here under that doctrine.

consuming process of toiling over time sheets and considering some unnecessary factors. *Rawlings*, 9 F.3d at 516–17.

## B. *Fees In a Common Fund Case*

### 1. The Percentage–of–the–Fund Method

Determining an award of attorneys' fees in a common fund case requires that the court consider factors which are not present in statutory fee shifting cases, such as under Title 42 U.S.C. § 1988.[9] *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir.1993). The Sixth Circuit explained why this is so:

> The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. In addition there is often no one to argue for the interests of the class (that their recovery should not be unfairly reduced), since it is to be expected that class members with small individual stakes in the outcome will not file objections, and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel.

*Id.* at 516.

■ The district court also has discretion to determine the percentage amount to be awarded in attorneys' fees. *Smillie*, 710 F.2d at 275. Generally, in common fund cases, the fee percentages range from 10 to 30 percent (10%–30%) of the common fund created. *See Bowling v. Pfizer, Inc.*, 922 F.Supp. 1261, 1283 (S.D.Ohio 1996) (awarding 10% of the common fund, plus expenses); *see also Paul, Johnson, Alston*

*& Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir.1989) (finding that, "25 percent has been a proper benchmark figure" for class actions); *Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp. 713, 718 (E.D.N.Y.1989) (acknowledging that class action attorneys' fees typically range from 15% to 30% of the recovery in the Second Circuit).

■ In *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir.1974), the Sixth Circuit set forth the factors that the district court must consider in assessing a reasonable award from a common fund: (a) the value of the benefits rendered to the class; (b) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (c) whether the services were undertaken on a contingent fee basis; (d) the value of the services on an hourly basis; (e) the complexity of the litigation; and (f) the professional skill and standing of all counsel. *Id.* at 1196; *see also Smillie*, 710 F.2d at 275; *In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 373 (S.D.Ohio 1990).

For the following reasons and for those reasons expressed in our Companion Order, this Court finds that the PSC and Plaintiffs Counsel have more than met all of the factors as stated in the cases of *Ramey* and *Smillie*, in regards to both the percentage-of-the-fund method, as well as the lodestar method.

a) There is a significant benefit to the Class by the settlement of this litigation for a reasonable amount. The average age of the class is 77.5 years old and there is a need for ongoing medical monitoring of some of the class members. Conse-

---

9. Section Title 42 U.S.C. § 1988 provides, in pertinent part, that "the court, in its discretion, may allow the prevailing party, ..., a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Section 1988 utilizes the "lodestar" method in arriving at a reason-

able fee; a reasonable fee is calculated by multiplying the number of hours reasonably worked by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

quently, time is of essence, and protracted litigation creates a risk that many class members may not see the fruits of any judgment in their lifetimes. As we stated earlier, we believe that the overall Settlement, to which should be added the value of the 1998–HCFA Settlement, is considered by this Court to be fair, adequate, and reasonable under the circumstances and to the Class as a whole.

Accordingly, we believe that the Second Settlement, Agreement, and Plan of Allocation are valuable because they insure immediate redress of individuals to whom, because of their average age, time is essential. Further, the Settlement insures that those members who need continued treatment, including medical monitoring will have such relief while at the same time be released from their obligations to reimburse HCFA.

**b)** The "benefit to society" factor is also satisfied in this case. In litigating this case, Class and Plaintiff's Counsel expended significant resources of both time and monies. Counsel employed expert witnesses and conducted extensive discovery, which included reviewing thousands of pages of documents, holding investigations, and deposing numerous individuals. We believe that, without such a class action, small individual claimants would lack the resources to litigate a case of this magnitude. Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources.

**c)** In regards to the services being undertaken on a contingency fee basis, we recognize that contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery. Class and Plaintiffs' Counsel accepted this litigation on a contingency fee basis, evidencing their recognition of the risk in this case. The risk that Counsel assumed entailed

working 76,000 hours and advancing a substantial amount of out-of-pocket expenses for the relatively modest rate of only $230.00 per hour.

**d)** The "value of the services" that the PSC requests for its attorney fees' totals $16,906196.40 ($16.9 million), which is 27.09% of the Total Fund, or a simple lodestar formula of 76,000 hours worked times a rate of $230.00 for a lodestar total of $17,480,000.00 ($17.4 million), which comes to 28.01% of the Total Patient Fund, all of which excludes the amount of the 1998–HCFA Settlement that was negotiated with the assistance of the PSC.

The fee request also does not include a multiplier. The reimbursement of the PSC's out-of-pocket expenses total $2,337,386.51 ($2.3 million), and the reimbursement of the costs of private contingent fee attorneys comes to $441,991.79. Finally, the PSC requests special payments to individual Plaintiffs in the amount of $158,500.00.

**e)** As seen from the history of this case, this litigation is weighted with complexities. The domiciles of class members span the nation. If this litigation proceeded to trial on an individual basis, in order to establish liability against the Defendants, the separate claimants would have to overcome a number of obstacles, such as establishing the liability of TPLC and then proving the liability of the Australian Defendants through the theories of alter ego and agency. Thus, we find that the fifth factor in the *Ramey* analysis is satisfied.

**f)** Finally, in examining the sixth factor of the *Ramey* analysis, we find that the professional skill and standing of all Counsel involved on behalf of the Class was highly commendable, professional, and was prosecuted with a great deal of skill.

This case represents hard-fought litigation, and, in the beginning, a settlement of

this magnitude appeared almost inconceivable. Class Counsel and Defendants' Counsel demonstrated their professionalism and skill by, after receiving the findings of the summary jury trial and being made aware of the strengths and weaknesses of their case, constructing a settlement from the remaining assets of TPLC, a contribution from PDL, and entering into an agreement with HCFA for its release of all subrogation claims to past, present, and future payments to class members associated with the cost of explants and fluoroscopies.

Recognizing the extensive amount of time, services, and skill the PSC, Plaintiffs' Counsel, and Defendants' Counsel expended in this case, the Court concludes that the reputations of all of the Counsel to this action are well earned and deserved.

### 2. The Lodestar Method

Some courts in this Circuit have adopted the percentage-of-the-fund method in such common fund cases, and others have recognized that under some circumstances the lodestar method is appropriate. *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 515–16 (6th Cir.1993) (citations omitted).

The lodestar method involves a calculation of "the number of hours worked, multiplied by a certain hourly rate, and typically, further multiplied by a 'multiplier' to account for the costs and risks that are inherent in advancing fees, the complexity of the case, and the size of the recovery." *Newberg on Class Actions,* supra, at § 12.55; *see also Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "The lodestar method better accounts for the amount of work done, while the percentage-of-the-fund method more accurately reflects the results achieved." *Rawlings,* 9 F.3d at 516.

All that the Sixth Circuit requires is that the award of attorneys' fees in common

fund cases must be "reasonable under the circumstances." *Rawlings,* 9 F.3d at 516; *Smillie v. Park Chemical Co.,* 710 F.2d at 275. Thus, district courts have the discretion "to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Rawlings,* 9 F.3d at 516 (affirming the district court's use of the lodestar method); *cf. Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir.1996) (affirming the district court's methodology, which based the fee award on a percentage-of-the-fund and then cross-checked the fee against class counsel's lodestar calculations).

■ The courts must ensure that class counsel are fairly compensated for the amount of work done as well as the results achieved. *Rawlings,* 9 F.3d at 516. Moreover, the court must provide a concise, clear explanation of the reasoning for adopting a particular methodology and the factors considered at arriving at the fee. *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933; *Rawlings,* 9 F.3d. at 516.

■ The Court recognizes that it has a choice in which of the two methods it adopts to determine the reasonable fee award. For the following reasons, the Court deems it reasonable to use the lodestar method for determining the fee award here for all of the stated reasons found in our Companion Order in general, as well as the following reasons, in particular:

(1) We find the lodestar method to be a very accurate measurement of the actual services provided by the PSC to the Class;

(2) the Court is given the opportunity to review the financial data by the Parties submitted for any duplication of work or other evidence of excessive billing that is being assessed to the Class;

(3) it is a simple and straightforward formula of hours worked times the hourly rate charged;

(4) the lodestar method has been an acceptable method of calculating fees in this Circuit for simple and mass tort cases, such as this case, for many years;

(5) both the PSC and Public Citizen requested during the Hearing that the lodestar method for their fee applications was acceptable, even though the two advocates strongly oppose each other on most other issues;

(6) none of the Parties or class members are objecting to the application of the lodestar formula in this case;

(7) the Court sees no real disadvantage to the Class since the percentage-of-the-fund numbers are similar, and oftentimes less than, the lodestar calculations in this case;

(8) the Court uses the actual percentage-of-the-fund derived as a means of checking for any significant variations between the two methods, in order to assess the lodestar's accuracy and the PSC's accountability;

(9) the percentage-of-the-fund method appears to provide no real advantage to the Parties and the Class as a whole under the facts and circumstances of this case; and

(10) the rates charged by the PSC ($230.00/hr.) and the rates charged by the PSC ($200.00/hr.) appears to be modest and reasonable, which leaves only the hours billed as needing records verification, and, thus, makes this Court's analysis much easier than trying to derive a reasonable percentage-of-the-fund, especially in light of the wide variations of awards in this Circuit ranging from ten to thirty percent 10% to 30%, or even more.

## C. *Calculating the PSC's Fee Award*

### 1. Introduction

The PSC requests an award of attorneys' fees in the lodestar amount of $17,480,000 as well as $2,337,386.51 to reimburse the PSC for its out-of-pocket expenses (doc. 1020). The PSC submitted a number of affidavits from its members detailing the work the PSC performed in litigating this case, including the number of hours expended by each member of each law firm and the attorney's respective hourly rate.

The affidavits submitted showed that the PSC and the other attorneys who provided the Committee assistance expended 75,854.07 hours in this case as of the PSC's February 1, 2001 filing, equating to a lodestar amount of $16,906,196.40 in fees. The Court makes an initial finding that the PSC's figure of 76,000 hours as of mid to late February 2001, and the proposed rate of $230.00 an hour initially appear to be reasonable in all respects. The lodestar amount using these figures amounts to $17,480,000, equating to 28.01% of the Total Fund. The PSC has not requested the Court to consider a positive multiplier in the calculation of the total settlement amount or to include the $5,000,000.00, 1998–HCFA Settlement in our direct calculations, and so the Court will not do so.

 The PSC has provided a detailed listing of its hours for the Court's review. After an initial review of the approximately 76,000 hours presented, the Court initially determines that they appear to represent a fair and appropriate amount of time to devote to such a complex litigation. The PSC has presented evidence that other attorneys in this area, under the circumstances of this case and for a Total Fund this size, receive compensation in the range of $230 per hour. The Court does not consider this amount to be unreasonable. The Court should also note that there were no objections by Public Citizen to the average hourly rate of $200.00 per hour when it's Application was presented to the

Court at the February 15, 2001 Fairness Hearing.

The value of the services rendered by PSC, or the "lodestar figure," calculated as of February 15th amounted to $17,480,000.00. The PSC has summarized the basic lodestar for each of the attorneys, paralegals and law clerks who have worked on this case (doc. 965). The PSC has also attested to its qualifications and experiences litigating mass tort class actions, such as the one before us. Moreover, the PSC has supported its requested hourly rate with a statement that the rate is based on an examination of similar awards to comparable attorneys for typical class actions.

The Court has carefully reviewed the hourly rates and the total number of hours billed by the PSC. We find that the hourly rates are initially determined to be reasonable, given the expertise, skill, and professionalism of the PSC in this type of litigation.

The time sheets submitted, financial data reviewed, and the records presented in this case amply demonstrate that this litigation involved complex factual and legal issues, which were vigorously defended by all Counsel.

The Court also notes that the requested amount represents 28.01% of the total amount of the Total Fund. Even if one analyzed the fee award in terms of a percentage-of-the-common-fund, the requested award of $17,480,000 is still within the range of reasonableness, which has been designated as between twenty to fifty percent of the common fund in several cases. See In re Cincinnati Gas & Elec. Co. Secs. Litig., 643 F.Supp. at 150.

Taking these figures together, the $17,480,000 requested by the PSC's Lead Counsel comprises an even a smaller percentage of the actual Total Fund, depending on the value accrued to the Class in regards to the 1998–HCFA Settlement.

Finally, although we have stated this earlier, it bears repeating: The PSC has exercised the highest degree of skill, dedication, and professionalism in this matter. Indeed, both the class members, as well as TPLC and the Australian Defendants, were well-served by the representation of their respective Counsel in this case.

The Court has reviewed all the submissions in connection with the fee and expenses Application. In light of our consideration of the above factors and those findings made in our Companion Order, we make an initial finding that the requested PSC fee award of $17,480,000 and expense award of $2,337,386.51 are reasonable, verifiable, appropriate under the circumstances.

### 2. Public Citizens' Concerns

Public Citizen, as *amicus curiae*, submitted several Memoranda in Opposition to the PSC's Application for Fees and Expenses, in which it outlined a number of reasons why the PSC's Application should be reduced.

First, Public Citizens asserts that it is bringing to the Court's attention several "side deals" that allegedly occurred in the course of the PSC's negotiations of the new proposed settlement, in which the PSC has allegedly agreed to pay undisclosed amounts of attorneys' fees to Plaintiffs' Counsel in return for those Counsel's agreements to recommend the settlement to their clients.

Second, Public Citizen objects to the PSC's request for fee and expenses. Specifically, Public Citizen asserts that as of the date of their first Memorandum in Opposition, the PSC had requested a figure of $16,830,278.15 ($16.8 million) in fees, which came to almost twenty-seven percent (26.97%) of the Total Fund, excluding the requested expenses. Moreover, the PSC also requests expenses of

$2,330,888.34 ($2.3 million) for itself and $441,991.79 for Plaintiffs' Counsel. In addition, the PSC seeks $158,500 in special payments to Plaintiffs who assisted in the litigation.

Together, these requested fees and expenses total $19,761,657.00, allegedly decreasing the Patient Benefit Fund by almost thirty-four percent (33.95%), from $58,200,000 to $38,438,343.00. Public Citizen contends that a fee award of no more than thirteen percent (13%) of the Total Fund or $8,112,000.00 ($8.1 million), plus reasonable expenses, is appropriate in this case.

Alternatively, Public Citizen asserts that, if the Court concludes that the PSC's agreement to pay fees to Plaintiffs' Counsel for certain class members out of its own fee award is unjustified, it should reduce the PSC's fee request accordingly.

Third, Public Citizen argues that the PSC's lodestar does not serve as an accurate cross-check on its percentage-of-the-fund request because the lodestar amount was based on excessive hourly rates, duplicative work and improper billing of clerical work, as well as other overhead costs.

Fourth, Public Citizen contends that the PSC should only receive a percentage of the money actually distributed to class members in any given year, rather than be given an up-front award on money that may never reach class members. In a related point, Public Citizen also noted that, whatever percentage the PSC was allowed to receive, it should be a percentage of the money left in the Total Fund after the PSC's expenses and the expenses of Plaintiffs' Counsel were deducted from the Fund.

Fifth, Public Citizen alleges that any "side deals" must be publicly disclosed, considered, and investigated by the Court in determining the fairness, adequacy, and reasonableness of the Second Settlement. Those "side deals" allegedly involves special payment to the Louisiana Objectors and attorney's fee payments to Plaintiffs' Counsel, who were representing previous Objectors to the First and Second Settlements.

Sixth, Public Citizen argues that the PSC's fee request is too high, whether calculated as a percentage of the fund or based on its lodestar. In the case at bar, Public Citizen contends that the percentage request is too high, because, after subtracting expenses, the PSC is seeking almost 30% of the Total Fund, which is far higher that the 13–20% fee typically permitted for a Fund of this size.

In addition, Public Citizen maintains that the lodestar does not serve as an accurate cross-check on its request, primarily because the PSC has billed the class for time and expenses that did not benefit the class and because the PSC's hourly rate is excessive. Public Citizen recommends that the PSC should be granted a fee of 13% of the Total Fund and reasonable expenses.

Seventh, Public Citizen asserts that the lodestar for attorney and paralegal time has not been reduced to account for the considerable duplication of work. According to Public Citizen, twenty-one different law firms submitted individual lodestars for their work over four years in their preparations in prosecuting a case against TPLC, Pacific Dunlop, and Nucleus.

Therefore, Public Citizen argues that, in light of the numerous problems that are visible from the affidavits submitted by the PSC during Public Citizen's discovery on this issue, this Court should reduce the lodestar to account for the alleged exorbitant hourly rates, the duplication of work, and the improper billing of clerical tasks. Only after the lodestar is adjusted for these problems could it serve as an accurate cross-check on the PSC's requested percentage fee award.

Finally, Public Citizen asserts that the PSC should not be awarded its fees and expenses for any of their time and expenses defending the First Settlement since the defense of that settlement was unsuccessful and failed to benefit the Class by delaying their payout for another two years.

### 3. The Court's Findings in Regards to Public Citizen

Having reviewed the concerns expressed by Public Citizen in its Memoranda in Opposition to the PSC's Attorney Fees and Expenses, the Court makes the following findings.

As an preliminary matter, the Court notes that the Sixth Circuit never reversed or directly addressed the PSC's Application, Plaintiffs' Incentive Award, and Plaintiffs' Counsel fee and expenses request, which came to approximately $19,000,000.00 ($19 million) or more than twenty-eight percent (28%) of the Total Fund that were granted by this Court during the First Settlement.

Furthermore, while it is true that Public Citizen, as a non-party and non-intervener, was granted *amicus curiae* status by this Court, however, that status does not necessarily bestow standing onto Public Citizen in order to formally Object to the terms, fees, expenses, or provisions of this Settlement as a party, intervener, or Objector.

The Court also initially note that Public Citizen's former client, Harold Reed, has decided not to object to the Second Settlement, but rather is no longer being represented by Public Citizen since he has chosen to formally opt-out, as of January 10, 2001. Nonetheless, the Court will attempt to address many of the concerns expressed by Public Citizen in its opposition memoranda.

First, during the Hearing, Richard Wayne, Esq., speaking on behalf of the PSC, assured the Court that there were no "side deals," no "evidence of collusion," and that Public Citizen's concerns are a matter of fee allocation in regards to Plaintiffs' Counsel work that has been done for the substantial benefit of the Class. In other words, Plaintiff's Counsel will be paid on a benefit to the class basis, just like any other attorney working on behalf of any another client.

Second, Mr. Wayne also assured the Court that though the PSC and Plaintiffs' Counsel may have discussed a dollar range in their fee arrangement requested, no specific dollar amount was offered, approved, or promised to Plaintiffs' Counsel until after the Court awards the fees to all of the Parties involved in this case. Any monies that remains in the Fund, excluding fees and expenses, after the one year Holdback Provision has expired, will revert back to the class members and not to the benefit of the attorneys in this case.

Moreover, under the circumstances of this case, when this Court awards a single fee to be divided among the PSC and Plaintiffs' Counsel that did work for the benefit of the class, "agreements" relating to the "allocation of attorneys' fees" would not necessarily injure the Class. That is why the Court during the Hearing investigated on the record, in front of all concerned, the allegations asserted by Public Citizen.

Furthermore, the amount of fees that this Court will deduct from the Total Fund for fees is the same regardless of the alleged existence of any "side deals" that may or may not have been entered into by the Parties to this case. The Court will maintain its judicial role as a protector of the Class by maintaining jurisdiction over any future "alleged disputes" over the allocation of fees between the PSC and individual members of the Plaintiffs' Counsel.

In addition, Mr. Wayne represented to this Court during the Hearing that, all members of the class are treated the same regardless of the fees and expenses that their individual Counsel will ultimately receive. Thus, any "side agreements" are not secret, does not appear to be collusive, and ultimately will not affect the distribution of the Total Fund to individual members of the class.

Third, the Special Master has the authority in the Second Settlement Agreement to increase the Holdback to the Class in order to look at all of the individual circumstances. Furthermore, the class members will be treated just like the other Parties to this Settlement in that any filing of objections to the amount paid to individual class members can be submitted to the Agreement's dispute resolution feature, which is ultimately reviewable by this Court.

Fourth, Roger Lucas, an attorney representing a number of class members from Alabama, stated during the Hearing that, he was only two weeks from trial and had expended over $100,000 in fees and costs when this Court issued our stay in this case. Mr. Lucas asserted that, since it was his clients' desire to endorse this settlement, he thinks it would only be fair, and not a "side deal," to be paid the amount of fees and expenses that he has invested so far in this case.

Fifth, attorney fees are paid according to all of the work actually done that is ultimately connected to the Settlement, as well as performed for the substantial benefit of the Class as a whole. During the Hearing, Mr. Wayne informed the Court that the PSC had completed 90% of its work in this case prior to the July 2000 decision of the Court of Appeals, and, therefore, to follow Public Citizen's arguments, the PSC should only be awarded 10% of its fee and expenses request even though this Second Settlement could not

have been achieved without the 90% of previous work done in the pursuit of the First Settlement.

Furthermore, Mr. Wayne asserted to the Court that he had a legal obligation to the Class as a whole to defend against the Objectors appeals of the First Settlement due to the rapidly aging population of that class and he had a good faith basis to believe that the First Settlement could be saved, even after appeal.

Sixth, not one class member/party, out of the pool of more than 25,000 possible claimants, have objected to the PSC's proposal of a straight lodestar based on the reasonable hours worked times a reasonable hourly rate. During the Hearing, Mr. Chesley, Lead Counsel for the PSC, asserted that there were at least 76,000 hours worked on this case times a composite hourly rate of $230.00 per hour, and no positive multiplier was requested for what he believed to be excellent work in this case.

Mr. Chesley also asserted that the PSC believed that the straight lodestar method would be preferable to the percentage-of-the-fund method due to its simplicity, straightforwardness, and as a true measure of a reasonable fee for the hours worked in this case.

According to Mr. Chesley anything less than a simple lodestar would be, in essence, punishing the PSC by applying a negative multiplier for a successful settlement in this case. In addition, Mr. Chesley asserted that the PSC should be given credit for the successful negotiation of the 1998 Settlement with the HCFA, which the PSC represented that it was not asking for any percentage-of-the-fund or financial recognition from that Settlement.

Seventh, during the Hearing, Amanda Frost, representing Public Citizen, asserted to the Court that one of the private

Plaintiff's Counsel, Phillip Hunter, who represents the class members known as the "Robinette claimants," was somehow "bought off" by the PSC in order to withdraw his previously filed Objections to the Settlement. When asked what specific proof she wanted to offer to the Court for such an accusation, Ms. Frost could not offer any, but instead reverted to the "appearance of impropriety" argument and several non-conclusive entries made by Counsel in her interrogatory requests.

It is interesting to note, that Mr. Hunter did not join Ms. Frost in her unsubstantiated allegations that he was somehow "bought off" because Mr. Hunter withdrew his objections. As a matter of fact, in its Response (doc. 1097), the PSC specifically denies this allegation involving Mr. Hunter, and further counters Public Citizen's charges with additional proof tending to show that Bennett Feldman, Viola Watts and Phillip Hunter strongly disagrees with Public Citizen's concerns.

Eighth, during the Hearing, Patricia Dean, representing the class members known as the "Colorado claimants," asserted to the Court that she had several cases that were prepared to go to trial in Colorado courts, but because of this Court's stay, her trials were put on hold. Ms. Dean assured the Court that even though this proposed settlement was far from perfect, her clients wanted her to settle this case for the sake of finality.

Nonetheless, Ms. Dean stated that she also believed that the attorneys working on behalf of the Colorado claimants should be compensated for a "fee for services rendered" arrangement with the PSC, which does not equate to a "side deal" or "evidence of collusion" with the PSC. Ms. Dean also strongly protested that she was not "bought off," as implied by Public Citizen.

Ninth, the PSC fully understands that its responsibility to the Class and the Court does not end upon final approval of this Settlement (doc. 1020). The PSC has assured the Court that it will continue to review Defendant TPLC's annual budgets, resolve issues related to disputed claims, continue to monitor any opt-out litigation facing Defendants TPLC, Pacific Dunlop and Nucleus, as well as seek to increase the value of the Total Fund.

In fact, there remains a great deal of additional work which needs to be done by the PSC involving the Federal Drug Administration ("FDA") and the administration of the Patient Benefit and Reserve Funds. Specifically, the PSC will work with TPLC in an effort to reduce TPLC's obligation to the FDA. These efforts could result in significant savings in the projected costs to TPLC and may result in the unused portion of any funds maintained by TPLC reverting to the Total Fund.

In addition, representatives of TPLC have been in contact with representatives of the FDA to discuss a reduction in the activities of TPLC. In accordance with the terms of the Settlement Agreement, the PSC will apply to the Court for the payment of a percentage of any funds that revert to the Total Fund as attorney fees for work that has been performed for the benefit of the Class.

Finally, the Court recognizes that although some 500 cases were transferred to this Court by the MDL, at the time of transfer, there were many cases that had been filed in numerous state courts around the county, some of which were rapidly approaching trials. An injunction was issued by this Court which was honored by Plaintiffs' Counsel, even though substantial resources and efforts in preparing their cases for trial were expended by those Counsel.

It is very likely that Plaintiffs' Counsel provided the PSC with materials that they developed which ultimately provided assis-

tance to the PSC in prosecuting this case. In addition, the pressure felt by all of the Defendants facing the continued prospect of defending numerous state court proceedings, prosecuted by highly skilled Plaintiffs' Counsel, also likely contributed to the resolution of this litigation.

It must not be forgotten that each of the Plaintiffs' Counsel had fee and expense arrangements with their clients that have not been fulfilled due to this Court's injunction. Those Counsel had taken on their client's causes fully expecting to be paid for the services they provided. The fact that the PSC has agreed to include those fees and expenses in their single fee Application does not suggest that fraud, collusion, special treatment, secret deals, etc., are present in this case.

The PSC has advised the Court that the fee agreements with Plaintiffs' Counsel would be compensated from the one-lump sum award that is granted by this Court. Their compensation fee would be based on a measurement of the value of their assistance to the PSC and to the class as a whole. The PSC has also informed the Court that if a fee dispute arises between the PSC and Plaintiffs' Counsel, then that dispute could be brought before this Court for resolution.

The Court also cautions the PSC, in general, and Plaintiffs' Counsel, in particular, that whatever compensation arrangements those attorneys had with their state court clients should be adjusted by the amount of compensation they receive from the fee and expense awards that are granted by this Court, in order to prevent an issue of double-billing from arising from such an arrangement.

Moreover, this Court firmly believes that many of the concerns of Public Citizen in regards to the "problems" of the First Settlement and Applications have been resolved in the Second Settlement, in general, and, this Order, in particular. This is especially true when one reviews the specific terms in the Sections on the PSC's Fee Reduction, Holdback Provision, and Interests that will be addressed later in this Order.

### 4. The PSC's Fee Reduction

Having reviewed this matter, our Companion Order, and all of the PSC's billing records, affidavits, memoranda in support and opposition, arguments in support and opposition at the Fairness Hearing, Dr. Atillio Granata's Reports, and the relevant case law on this issue, as well as Public Citizen's Response to the PSC's Application for Fees and Expenses, this Court must also find that we agree-in-part with Public Citizen's concerns in that, there appears to be some duplication of efforts, improper billing of clerical tasks, excessive costs of or amount of copying, attorneys performing clerical tasks, and some inflation of billing/expenses in regards to the PSC's Application in this case.

However, the Court also notes that in prolonged, protracted, and complicated cases, such as the one before us, this conclusion is not totally unexpected, especially when considering that almost 100 firms were involved in the litigation of this case in one way or another.

Therefore, in the interest of justice, fairness, reasonableness and for good cause shown, the Court shall REDUCE the PSC's requested lodestar fees and expenses by a total of five percent (5.0%) each. Accordingly, the PSC is AWARDED the amount of $16,606,000.00 ($16.6 million) in fees and $2,220,517.00 in expenses

### 5. The Holdback Provision

Although Class Counsel requested at the February 15th Hearing that the total sum, if awarded, be provided to Class Counsel at one time, we disagree in light of the

Holdback Provision precluding some of the class members from receiving their total award in one payment. According to the terms of the Agreement, there is a one year Holdback Provision for up to 25% of the payment to the Class Categories as defined in the Second Settlement Agreement.

■ Accordingly, Class Counsel shall receive seventy-five percent (75%) of their total attorneys' fees immediately, with the remaining twenty-five percent (25%) provided in four subsequent and equal installments, annually. The first of the four installments to the PSC shall be made at the same time that the one year Holdback Provision payment is paid to the Class Members by the Settlement Master.

### 6. Interests

■ We also note that the Class is not to receive the interest on the amount of their award that is withheld due to the Holdback Provision. In accordance with that principle, we believe that the PSC should similarly not receive interest on the amount of attorneys' fees that are withheld from the initial payment. Interest from both the amounts withheld from the Class and the amount withheld in attorneys' fees shall be used by the Special Master to pay administrative costs and expenses.

### 7. Final Calculation of the PSC's Fees and Expenses

As noted above, the Court shall reduce the PSC's requested attorney fees of $17,480,000.00 by $874,000.00, or 5.0%, for a fee award of $16,606,000.00 ($16.6 million).

Likewise, the Court shall reduce the PSC's requested expenses of $2,337,386 by $116,869, or 5%, for an expense award of $2,220,517.00 ($2.2 million).

### 8. Summary

As of the date of this Order, the Class totals over 25,000 members, approximately 13,000 members are alive and 12,000 are deceased, with the average age of the class members estimated by the Settlement Master to be approximately 77.5 years of age. The Court is not aware of any remaining Objectors to this Second Settlement, which is remarkable when considering the factual and procedural histories of this case, as well as the fact that there were over 50 Objectors to the First Settlement and to the PSC's Application, who appealed that Settlement.

Therefore, based upon the foregoing, this Court finds that not only is the Second Settlement fair, adequate, and reasonable in light of the circumstances of this case and to the Class as a whole (*see* doc. 1018), but we also find that there is no evidence of any "side deals," "special treatment," "collusion," or "secret agreements" in relation to this Settlement, in general, and the PSC's Application for Attorneys' Fees and Expenses and the allocation of those fees with Plaintiffs' Counsel, in particular.

## III. CONCLUSION

For the reasons set forth above and for good cause shown, the Court hereby GRANTS–IN–PART the following Motions in this case: (1) the PSC's Memoranda in Support of its Application for Attorneys' Fees, Expenses, Class Representative Awards, and Response to Public Citizen's Memoranda in Opposition (docs. 640, 689, 690, 965, 1018, 1020, 1029 & 1097), and (2) Public Citizen's Application for an Award of Attorneys' Fees and Expenses (doc. 995).

In addition, this Court hereby DENIES Robert A. Perez, Sr.'s, Serving as Local Counsel, Application for Reasonable Attorneys' Fees and Expenses on Behalf of Class Member, Harold Reed (docs. 989 &

1084) but awards a reasonable fee to Mr. Perez to be provided by Public Citizen from its award.

Accordingly, having heard the oral and written arguments of the PSC regarding their request for fees, as well as its expenses for the entire settlement, and Public Citizen's concerns that were expressed against the settlement, as well as its attorneys' fees and expenses, we hereby CONCLUDE that the Second Settlement is fair, adequate, and reasonable under the circumstances of this case and to the Class as a whole for the reasons expressed by this Court in our Companion Order.

Therefore, the Court hereby AWARDS the following fees and expenses to the following Parties in this case to be paid from the Total Fund in accordance with the terms and provisions of this Order and the Settlement Agreement:

(1) $16,606,000.00 shall be paid to the PSC by the Settlement Master for its reasonable legal fees that benefitted the Class, and, specifically, according to the terms of the Holdback Provision and Interests Sections of this Order, such fees are also to be used to fairly and reasonably compensate Plaintiffs' Counsel for their legal efforts taken on behalf of, and for the benefit of, the Class as a whole;

(2) $2,220,517.00 shall be paid to the PSC for reimbursement of its reasonable expenses, to be paid immediately by the Settlement Master;

(3) $441,991.79 shall be paid to Plaintiffs' Counsel for reimbursement of their out-of-pocket and reasonable expenses, to be paid immediately by the Settlement Master;

(4) $77,000 shall be paid to Public Citizen for its reasonable legal fees that benefitted the Class, such sum is also to be used to fully reimburse Public Citizen's Local Counsel, Robert A. Perez, Sr., for his documented and reasonable legal work that was rendered on behalf of, as well as for the benefit of, Public Citizen and the Class

as a whole as Local Counsel, to be paid immediately by the Settlement Master;

(5) an award of $4,674.61 in litigation expenses shall be paid to Public Citizen, such sum is also to be used to fully reimburse Public Citizen's Local Counsel, Robert A. Perez, Sr., for his documented and reasonable expenses that were rendered on behalf of, as well as for the benefit of, Public Citizen and the Class as a whole as Local Counsel, to be paid immediately by the Settlement Master;

(6) an award of $461.57 in reasonable litigation expenses, for the benefit of the Class, shall be paid to the Pittsburgh law firm of Malakoff, Doyle & Finberg, to be paid immediately by the Settlement Master; and

(7) special payments in the amount of $158,500.00 shall be paid to the Class Representative and certain Plaintiffs that assisted in the prosecution of this litigation for the benefits of the Class, as directed by the PSC and to be paid immediately by the Settlement Master.

Finally, the PSC's fees are to be paid by the Settlement Master as follows: (1) 75% of such fees are to be paid immediately; (2) the 25% balance of such fees is to be paid in four equal and annual installments, the first installment is to be distributed to the PSC at the same time as the distribution of the one-year Holdback to the Class; and (3) the interest from both the amounts withheld from the Class and the amount withheld in attorneys' fees shall be used by the Special Master to pay administrative costs and expenses.

SO ORDERED.